## CELLULOID MANUF'G CO. *v.* COMSTOCK & CHENEY CO.[1]

*(Circuit Court, D. Connecticut.  April 24, 1886.)*

1. PATENTS FOR INVENTIONS—WHAT IS PATENTABLE.
    It has always been the law that a patentable invention, although new and useful, must be the result of something more than and different from mechanical skill.

2. SAME—INVENTION—UTILITY AND NOVELTY AS EVIDENCE OF.
    The existence of novelty and utility in a patented thing has been potent in

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

the determination of the question of its patentability.   *McCormick* v. *Seymour,* 2 Blatchf. 240; *Furbush* v. *Cook,* 2 Fisher, 288; *Middleton Tool Co.* v. *Judd,* 3 Fisher, 141.

3. SAME—INVENTION—EVIDENCE INDEPENDENT OF UTILITY AND NOVELTY NOW REQUIRED.

The decision in *Hollister* v. *Benedict & Burnham Manuf'g Co.,* 113 U. S. 59, S. C. 5 Sup. Ct. Rep. 717, makes independent evidence of the existence of inventive skill, apart from inferences of such existence which may be drawn from novelty and utility, to be of greater importance than has been understood heretofore.

4. SAME—HYATT PATENT—CELLULOID COVERING FOR PIANO KEYS.

The question of patentability in Hyatt's invention again considered, and the patent sustained.

5. SAME—HYATT'S INVENTION.

There was the creative faculty of invention in the abandonment of the ineffectual and mechanical attempt to make single celluloid keys in imitation of ivory single keys, and in the conception of the idea of covering a whole key board with a single celluloid sheet.

6. SAME—PRACTICE—SUSPENDING ACCOUNTING.

The patent in suit having been declared void for want of novelty by another court, (*Celluloid Manuf'g Co.* v. *Tower,* 26 Fed. Rep. 451,) from which decision a notice of appeal to the supreme court had been given, a stay of the accounting was asked in this case; but as the facts in this case had features not brought out in the other case, *held,* that there was no adequate reason for a stay of the accounting.

Motion for Rehearing.   The former opinion was rendered July 31, 1884, and is reported in 21 Fed. Rep. 313.   The important ground of the motion was that since the date of the former opinion the supreme court of the United States had, by judicial authority, in *Hollister* v. *Benedict & Burnham Manuf'g Co.,* 113 U. S. 59, S. C. 5 Sup. Ct. Rep. 717, and *Thompson* v. *Boisselier,* 114 U. S. 1, S. C. 5 Sup. Ct. Rep. 1042, so far changed the law of the land governing reissues as that the claimed invention purported to have been secured by the letters patent in suit is excluded from claims to patentability.

*John K. Beach* and *John S. Beach,* for the motion.

*Frederick H. Betts,* against the motion.

SHIPMAN, J.   This is an application by the defendant in the above-entitled case for a rehearing.   The hearing upon the application was considered to be practically a rehearing or reargument of the question of patentability.   The facts were substantially stated in the opinion of the court in 21 Fed. Rep. 313.   The important ground for a rehearing is stated in the application as follows: "That since said interlocutory order and decree was passed the law of the land governing the question of patentability of inventions has been so far changed, under the judicial authority of the supreme court of the United States, as that the claimed invention purported to have been secured by the letters patent in suit is excluded from claims to patentability.

The opinion of this court was rendered July 31, 1884.   The decisions of the supreme court to which reference is made are *Hollister* v. *Benedict & Burnham Manuf'g Co.,* 113 U. S. 59, S. C. 5 Sup. Ct.

Rep. 717, and *Thompson* v. *Boisselier*, 114 U. S. 1, S. C. 5 Sup. Ct. Rep. 1042. The first of these cases was decided January 5, 1885.

The following sentences from the former opinion of this court state the point in controversy with sufficient clearness:

"The invention did not consist in the substitution of celluloid for ivory, whereby a reduction in the price of keys was caused, but it consisted in the fact that, by the use of celluloid, there was practically furnished a new and useful mode of constructing key-boards, viz., by cementing to the board a single sheet of the veneer, instead of by gluing a large number of separate pieces of ivory, which must each be matched and separately fastened to the wood. This new method of construction was impracticable with ivory, or with any material which was known before celluloid was manufactured, and it required invention to find out and demonstrate that key-boards could be manufactured so as to be a commercial article by covering their upper surfaces with a single sheet of a material which would make an attractive and permanent coating for the wooden keys, because from the fact that celluloid existed it by no means followed that a key-board could be sufficiently and successfully covered with it."

The single point now in the case is this: In view of the recent judicial statements of the requisites necessary to cause a new and useful improvement to be a patentable invention, as contrasted with the method of reasoning by which judges were formerly accustomed to pass upon the question of the presence of inventive skill, was the decision of the court in favor of patentability correct? It has always been the law that a patentable invention, although new and useful, must be the result of something more than and different from mechanical skill; but the existence of novelty and utility in a patented thing was potent in the determination of the question of its patentability. This is clearly shown in the well-known charges to the jury of Mr. Justice NELSON in *McCormick* v. *Seymour*, 2 Blatchf. 240, and of Mr. Justice CURTIS in *Furbush* v. *Cook*, 2 Fisher, 288. Judge WILLIAM D. SHIPMAN in *Middletown Tool Co.* v. *Judd*, 3 Fisher, 141, expressed the views which judges were wont to entertain in regard to the rigor with which courts should search for the presence of inventive genius as follows: "Whenever a change or device is new and accomplishes beneficial results, courts look with favor upon it. The law in such cases has no nice standard by which to gauge the degree of mental power or inventive genius brought into play in originating the new devices." In *Hollister* v. *Benedict & Burnham Manuf'g Co.* the court was called upon to consider an improvement which was admitted to be novel, and to be of superior utility, and which was not a slight advance in the art, but which was yet held to involve "only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge," and not to be the "creative work" of the "inventive faculty." The facts which were apparent in the record of the case, and which are disclosed in the opinion, as well as the vivid language of Mr. Justice MATTHEWS, who spoke for the court, make the decision a very significant one; for the stamp which the internal revenue department caused to be used was a marked im-

provement upon its predecessor, remedied a serious evil, and was regarded by the department with great satisfaction. It must be seen that this decision makes independent evidence of the existence of inventive skill, apart from inferences of such existence which may be drawn from novelty and utility, to be of greater importance than has been understood heretofore.

The facts in the case fully justify the finding of novelty and utility. The facts upon the question of invention are these: While the idea of a continuous ivory key-board has been attempted, it was practically and commercially a failure. Celluloid for single keys had been suggested and attempted, and was a failure. A continuous covering for a key-board would probably diminish the expense of production. Hyatt had unsuccessfully tried celluloid strips for single keys. He abandoned that idea, and got the idea of using a single sheet of celluloid, and waited until he had succeeded in satisfactorily making thin sheets. This manufacture of thin sheets was a very important step in the art, and caused celluloid to be capable of a new variety of uses. He then applied these sheets, having the capacities of hardness, smoothness, susceptibility of polish, and uniformity of color, to a piano key-board. On the one hand, the argument is that the inventive, the creative, idea—the genius—of the inventor consisted in the conception that the use of a whole sheet of celluloid would overcome the difficulties which attended the use of single strips, and would make a key-board equal to and cheaper than one made of ivory strips, and that subsequent experiment successfully embodied and carried into effect the idea. Polished sheets and various kinds of cement were tried and abandoned, and finally the sheet which is now in use was found to be adapted to the necessities of the work. On the other hand, it is said that a continuous veneer of a blank key-board was not a new idea; that it had been accomplished; and that when the new thin sheets of celluloid had been produced the idea of applying the sheet, and the application of it to a key-board, was merely the "display of the expected skill of the calling." To produce the sheet required invention, but the application of the sheets as a substitute for ivory was the work of the mechanic.

While the mind may hesitate whether one or the other line of argument preponderates, I think that there was the creative faculty of invention in the abandonment of the ineffectual and mechanical attempt to make single celluloid keys, in imitation of ivory single keys, and in the conception of the idea of covering a whole key-board with a single celluloid sheet,—an idea which, when embodied, turned into commercial success what had previously been only an unsuccessful theory in regard to a similar use of ivory. It is urged by the defendant that inasmuch as the circuit court for the district of Massachusetts in the case of the *Plaintiff* v. *Tower*, 26 Fed. Rep. 451, had decided the plaintiff's patent to be void for want of patentability, and the plaintiff has given notice of an appeal to the supreme court, it

.would be proper to suspend the accounting in this case until the .Tower Case shall have been tried. Upon the facts as detailed in the .opinion of the court the decision of the Tower Case was right. The ,facts in this case have features which were not apparently brought ;out in that case. Therefore I think that there is no adequate reason for a stay of the accounting.

The motion for rehearing is denied.